UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRY D. ALTMAN,

        Plaintiff,

v.

Case No. 1:07-cv-1251

Hon. Gordon J. Quist

KENNETH McKEE, UNKNOWN JOHNSON,
and ROBIN BELL,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on defendants' motion for summary judgment (docket no. 13). Plaintiff has not opposed this motion.

    **I.**    **Background**

In an earlier opinion, the court summarized plaintiff's allegations as follows:

In his *pro se* complaint, Plaintiff sues Bellamy Creek Correctional Facility (IBC) Warden Kenneth McKee, the IBC Warden's Administrative Assistant Robin Bell, and Sergeant Johnson.

Plaintiff asserts that he is "being sanctioned by Defendants" because they are keeping him in a higher security level than necessary and is being denied access to "outside dental care." (Compl. at ¶ 2.) Plaintiff further asserts that he had been given a "Special Accommodation Notice for no open dorm" that was ignored by Defendant Johnson. (Compl. at ¶ 8.) Plaintiff asserts that he was punished because he "successfully defended himself from being abused, ridiculed, and prosecuted when Sergeant Johnson attempted to force Plaintiff to harm himself by allowing Sergeant Johnson to bully and abuse Plaintiff into being housed in an open dorm, contrary to Plaintiff's medical need. . . ." (Compl. at ¶ 36.)

Plaintiff saw a dentist at IBC healthcare on July 16, 2007, and was informed that he needed a root canal and cap, but the dentist was not permitted to do that work and "could only offer to extract the tooth for Plaintiff." (Compl. at ¶ 26.) Plaintiff

requested to see an outside dentist, at his own cost, for the root canal and cap and the outside dentist promised to complete the necessary paperwork. (*Id.*) On September 5, 2007, Defendant McKee's assistant sent Plaintiff a memorandum stating that since Plaintiff had refused to have his tooth extracted Plaintiff had "refused the services that IBC Dental Office offered." Plaintiff states that he then saw another dentist on September 7, 2007, and was told that the tooth needed to be extracted. (Compl. at ¶ 30.) Plaintiff responded by asking that his tooth not be extracted. (*Id.*) Plaintiff alleges that the dentist was then "very rough throughout the procedure" of replacing a filling in another tooth. (*Id.* at ¶ 32.) On September 7, Plaintiff wrote to Defendant McKee asking again to be allowed to "go to an outside dentist or transferred to a facility near Plaintiff's dentist in Farmington, Michigan." (Compl. at ¶ 33.)

On September 25, 2007, Plaintiff saw Defendant McKee, discussed his situation and was told:

> I've receive [sic] all of your letters, have read them, and forwarded them on. I will not allow you to go to a Non-secure Level-I Camp to then go to an outside dentist. You blew Level-I camp when you got here by getting that ticket. It's that behavior. As far as your tooth, the dentist offered to pull it, and that's your only option. You should let him, because based on that ticket, you're not going to Level-I Camp, and you're not going to your outside dentist.

(Compl. at ¶ 35.)

Plaintiff asserts that his Eighth and Fourteenth Amendment rights were violated because he was punished for having and trying to enforce a Special Accommodation Notice, which allowed him not to be housed in an open dorm due to his "medical condition." Plaintiff further asserts that he did not receive the dental treatment he desired and was housed at a higher security-level facility making him unable to see his outside dentist due to the cost of paying for a two-guard escort instead of a one-guard escort. Plaintiff also asserts that Defendants have violated the Americans with Disabilities Act (ADA) by Defendants' refusal to give him the special accommodation requested and also allow him to visit his own dentist. (Compl. at ¶ 40.)

For relief, Plaintiff requests $10,000,000.00 in compensatory damages from each Defendant, $18,000,000.00 of exemplary damages, attorney fees and costs, declaratory and injunctive relief from this Court protecting Plaintiff and an order directing that:

> Plaintiff be transferred to a Non-secure Level-I facility near his Dentist, located in Farmington, Michigan; that he be allowed to go to his dentist in accordance with Mich. Dep't. of Corr., Policy Directive

> 04.06.135; that no further retaliation be accomplished against Petitioner [sic] by Defendants or their fellow employees of the Michigan Department of Corrections; and that Defendants be charged and prosecuted for their illegal actions against Plaintiff that have violated his civil rights and those that have broken the law pertaining to the Americans With [sic] Disabilities Act.

(Compl. at ¶ F.)

Opinion at pp. 2-4 (Feb. 22, 2008) (docket no. 2).

After reviewing the complaint as required by the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), the court construed the complaint as containing three claims: an Eighth Amendment violation; a First Amendment retaliation claim; and an ADA claim. The court dismissed the Eighth Amendment and ADA claims for failure to state a claim upon which relief can be granted. *Id.* at p. 9. The sole issue remaining before the court is defendants' motion for summary judgment with respect to the First Amendment retaliation claim.[1]

## II. Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for

---

[1] The court notes that defendants' motion seeks summary judgment on an Eighth Amendment claim and a due process claim. The court need not address these arguments. As previously discussed, the court dismissed plaintiff's Eighth Amendment claim, and the court did not find a separate due process claim buried within plaintiff's complaint.

> summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

"The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2nd Cir. 1996). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

### III.    Plaintiff's § 1983 claim

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

### A. Plaintiff's retaliation claim

Plaintiff alleged in his complaint that staff retaliated against him because "he successfully defended himself against a bogus ticket written against him by Sergeant Johnson when [Johnson] tried to force Plaintiff into living in an open dorm setting." Compl. at ¶ 43. Plaintiff further alleged that defendant Warden McKee

> is acting together in retaliation with Sergeant Johnson by holding Plaintiff at a far higher security Level-II prison, and by refusing to allow Plaintiff to transfer back to a Non-secure Level I facility, where Plaintiff will have to pay the cost of only one officer to escort him to an outside dentist instead of paying for the required two officers when going outside from a Level-II facility -- which is the very reason Plaintiff was transferred to the Bellamy Creek Non-secure Level-I facility on 16 April 2007.

Compl. at ¶ 11 (1).

Plaintiff was transferred to IBC on April 16, 2007, with a Level I security classification. Transfer Order, attached to defendants' brief as Exh. 1. Later that day, defendant Johnson issued plaintiff a major misconduct charge, which reads in pertinent part as follows:

> On 4-16-07 at about 1940 hrs prisoner Altman 228574 was given a direct order by this writer to go to lock up in A-unit. Prisoner Altman stated he can't due to a medical accommodation. I contacted Health Care & they stated that he would be ok to lock in A-unit until Health Care could review his file. I instructed prisoner Altman of this & he still refused to comply with my direct order to go to lock up in A-unit.

Major Misconduct Report, attached to defendants' brief as Exh. 2. That same day, defendant McKee ("Warden McKee") determined that plaintiff's behavior was not suitable for Level I security classification and placed him at Level II. McKee Affidavit at ¶ 3, attached to defendant's brief as Exh. 5. The transfer was appropriate under Michigan Department of Corrections, Policy Directive 05.01.140(F), which provides in pertinent part that "[t]he Warden . . . may authorize the transfer of a prisoner to another security level within the institution." *Id.* Warden McKee documented the

reclassification on April 17, 2007.  Security Classification Screen Review, attached to Compl. as Exh. C.

Plaintiff had a major misconduct hearing on May 1, 2007.  Major Misconduct Hearing Report.  Upon reviewing the matter, the hearing officer found that plaintiff had a doctor's order and a Special Accommodation Notice for "no open dorm setting."  *Id.*  The Special Accommodation Notice established an affirmative defense to the misconduct on the ground that defendant Johnson's order was "unreasonable" under the circumstances.  *Id.*  The hearing officer explained that "[plaintiff] cannot be housed in an open dorm setting, which A unit at the dorm is," and found him not guilty of disobeying a direct order.  *Id.*

In a letter dated May 21, 2007 directed to Warden McKee, plaintiff requested a transfer to a Level I facility, stating in pertinent part as follows:

> According to the x-rays in my dental file, I have two or three teeth that need a root canal and a cap -- which Michigan Department of Corrections' dentists are not allowed to perform.
>
> Although a temporary adhesive material was placed over one tooth, the decay within that tooth continues and rather than have my teeth pulled, I prefer to go off-site to my dentist to have the tooth repaired and saved.
>
> Pursuant to PD 04.06-135, PRISONERS REQUESTING OUTSIDE HEALTH SERVICES AT OWN EXPENSE, please allow me to go to my outside dentist by transferring me to a non-secure Level-I facility nearest Oakland County on a medical transfer, so I may ask the warden there to allow me to go to my dentist . . .
>
> Please make arrangements to transfer me to a non-secure Level I facility near Oakland County so that I may be allowed to go to my outside dentist as soon as possible.  I am a True Level-1, camp eligible, gate pass eligible, and I have a Permanent Medical Accommodation in my medical file indicating "No Open Dorm Setting."  The tooth hurts but I want to save my teeth.

Letter to McKee (May 12, 2007) attached to Compl. as Exh. R.

> On June 27, 2007, Warden McKee replied as follows:
>
> Mr. Altman,
>
> I reviewed your file for Level I placement on 6/1/07 and find you are appropriately placed in Level II until 12/1/07 when I will re-review your file.

*Id.* That same day, plaintiff filed a grievance, in which he alleged that Warden McKee denied his transfer to Level I because plaintiff "pissed off Sergeant Johnson." *See* Grievance IBC 07-06-1933-24a, attached to Compl. as Exh. M.

Plaintiff's retaliation claim appears to be in two parts. First, he alleges that Warden McKee's initial Level II security classification was in retaliation for plaintiff's successful defense of the major misconduct ticket. Second, he alleges that Warden McKee's denial of plaintiff's request for a transfer to a Level I facility on June 1, 2007 was in retaliation for "pissing off" defendant Johnson.

### B. The initial Level II security classification

To prove a First Amendment retaliation claim, plaintiff must establish three elements: "1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). *See also Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

"Lawful incarceration brings about the necessary withdrawal of or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Price v. Johnston*, 344 U.S. 266, 285 (1948). However, a prison inmate retains certain First Amendment

7

rights that are not inconsistent with his status as a prisoner or with legitimate penological objectives. *See Pell v. Procunier*, 417 U.S. 817, 822 (1973). These retained First Amendment rights include the right to file grievances against prison officials. *Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996).

There is no allegation here that defendants transferred plaintiff to Level II in retaliation for filing a grievance or otherwise petitioning the government for redress. Rather, plaintiff alleges that the transfer was in retaliation for his successful defense of the misconduct ticket.

Neither party has provided the court with any authority on whether plaintiff's defense of a prison misconduct charge is protected conduct in the context of a First Amendment retaliation claim. The court is aware of a Second Circuit opinion which indicates that mounting a legal defense to a formal charge issued by a state regulatory agency may be protected conduct for purposes of a First Amendment retaliation claim. *See Blue v. Koren*, 72 F.3d 1075 (2nd Cir. 1995). However, that case did not arise in a prison setting and, of course, is not binding on this court.[2]

---

[2] In *Blue v. Koren*, 72 F.3d 1075 (2nd Cir. 1995), the plaintiff operated a nursing home that was subject to periodic inspections by the New York Department of Health ("DOH"). *Blue*, 72 F.3d at 1079. The DOH had previously charged the plaintiff with violation of state regulations regarding the use of naso-gastric tube feeding. *Id.* The plaintiff appealed to an administrative law judge, who upheld the plaintiff's tube feeding procedure. *Id.* Approximately one year later, the DOH performed an extended certification survey (inspection) that was more comprehensive than past surveys and cited the plaintiff with several severe deficiencies. *Id.* The DOH followed up on this survey and determined that the most severe deficiencies were not corrected. *Id.* As a result of the DOH's actions, steps were taken to terminate the nursing home's participation in Medicare and Medicaid. *Id.* at 1079-80. The plaintiff alleged that the negative surveys were in retaliation for its successful defense of the tube feeding procedure, and characterized this defense as protected conduct under the First Amendment. *Id.* at n. 3. In a footnote, the court observed that "a right to defend oneself against a formal charge without being subjected to retaliation by government officials may be easily derived either from the right to a hearing under the Due Process Clause or from the First Amendment right to petition the government. . . defending against a formal charge is sufficiently analogous to petitioning the government for retention of the status quo as to warrant First Amendment protection against retaliation." *Id.*

Assuming, *arguendo*, that plaintiff's actions could be construed as protected conduct, his claim fails because plaintiff cannot establish that his defense of the misconduct ticket motivated defendants to classify him at Level II rather than Level I. To demonstrate the causation element of a retaliation claim, "the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith*, 250 F. 3d at 1037, *citing Mount Health City School District Board of Education v. Doyle*, 429 U.S. 274, 287 (1977). "If the plaintiff is able to make such a showing, the defendant has the burden of showing that the same action would have been taken absent the plaintiff's protected conduct." *Id.* If defendant can show that she would have taken the same action in the absence of the protected activity, then she is entitled to prevail on summary judgment. *Thaddeus-X*, 175 F.3d at 399.

Warden McKee classified plaintiff at Level II on April 16, 2007, nearly two weeks before plaintiff engaged in the alleged protected conduct, i.e., defending the major misconduct charge on May 1, 2007. Plaintiff's successful defense of the misconduct charge could not have motivated Warden McKee's classification decision, because it occurred after that decision. The decision to transfer plaintiff was made in the absence of plaintiff's alleged protected conduct. Accordingly, defendants are entitled to summary judgment with respect to plaintiff's retaliation claim arising from his initial Level II classification.

### C. Plaintiff's request for a transfer

Defendants concede that plaintiff filed a grievance dated June 27, 2007 contesting Warden McKee's denial of a request for a transfer. In that grievance, plaintiff quotes a corrections officer as stating that "the warden turned down your transfer to Level I because you pissed off Sergeant Johnson." But while the right to file a grievance is protected conduct under the First

9

Amendment, plaintiff filed this grievance after Warden McKee denied his transfer request. The grievance could not have been a motivating factor in the warden's denial of the request.

Plaintiff does not allege that he engaged in any other protected conduct that could serve as the basis for a First Amendment retaliation claim. In the absence of protected conduct, the court will not interfere with the warden's decision to transfer, or not to transfer, plaintiff. "[F]ederal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment." *Sandin v. Conner*, 515 U.S. 472, 482 (1995). "Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life." *Id. See Ward v. Dyke*, 58 F.3d 271, 273 (6th Cir. 1995) (courts must accord prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"). Correctional officials are professional experts in matters of security and discipline; as such they are better suited to make decisions about security and discipline than are the courts. *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).

Accordingly, plaintiff has failed to demonstrate any facts to support a First Amendment retaliation claim.

### V.     Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 13) be **GRANTED**.


Dated:  January 7, 2009                                  /s/ Hugh W. Brenneman, Jr.
                                                         HUGH W. BRENNEMAN, JR.
                                                         United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within eleven (11) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).